**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **JAMES McNAMARA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **KMART CORPORATION** | : | **NO. 2008/18** |

### <u>MEMORANDUM OPINION</u>[1]

**Savage, J.**                                                                                        **January 5, 2010**

In this personal injury action, the plaintiff James McNamara ("McNamara") claimed that he had injured his lower back when he slipped in the defendant Kmart Corporation's ("Kmart") store on January 24, 2008. Six days after the incident[2], he saw Dr. Gary Jett, a physiatrist, who examined him and prescribed physical therapy three times a week for four weeks. Dr. Jett did not see his patient again until almost seven months later. At that time, the doctor prescribed physical therapy twice a week for four weeks.

McNamara never lost a day of work as a result of any injury he sustained in the Kmart incident. He continues to work for the Virgin Islands Legislature at the same job he had at the time of the incident. Since the incident, he received a raise and no reassignments.

In his expert report, dated August 22, 2008, two days after the second visit, Dr. Jett

---

[1] The rationale for the rulings affecting the plaintiff's experts was not recorded. This memorandum is issued to explain the bases for limiting expert testimony and to correct a misstatement made by the plaintiff on appeal regarding the parties' waiving a *Daubert* hearing.

[2] Within five weeks of the incident and before Dr. Jett or any physician reached a conclusion as to the permanency or extent of McNamara's condition, McNamara filed his complaint in which he alleged a loss of income and loss of capacity to earn income as a result of his injuries.

diagnosed McNamara's condition as generalized "lumbar disc disease." He made no finding as to impairment or disability. He attached a "Future Medical Needs and Expenses Chart" that he had prepared immediately after the initial visit, six days after the injury.

On October 8, 2008, Dr. Jett issued an "addendum report" in which he discussed the results of an MRI performed on September 26, 2008. He noted that McNamara had disc herniations at L4/5 and L5/S1 with degenerative disc disease from L2 through L5/S1. Nowhere in his report did he relate the disc herniations to the Kmart incident.

At trial, Dr. Jett testified regarding his examinations, evaluation, course of treatment, diagnosis and prognosis. He was not permitted to testify as to potential future appliances, household and home maintenance expenses because there was no reliable foundation for such testimony in his expert reports. When asked why McNamara had not recovered, he responded, "I'm not sure." Tr. 198.

Before trial, Kmart moved to exclude the testimony of Susan McKenzie, a vocational rehabilitation counselor, and Robert Johnson, an economist. McKenzie was proffered to opine on McNamara's employability, a comparison between his pre-injury earning capacity and his post-injury earning capacity, and recommendations for rehabilitation. Johnson was primarily offering an opinion as to the present value of McNamara's damages. McNamara filed a written response to the *Daubert* motions. Notwithstanding McNamara's representation to the contrary on appeal, the parties agreed, during a conference, that a *Daubert* hearing was not necessary and the motion could be decided on the basis of the reports.

Kmart's motion with respect to McKenzie was granted in part and denied in part, and the motion to preclude Johnson's testimony was granted. McKenzie was permitted to

2

testify regarding the effects of McNamara's functional disabilities upon his occupational opportunities. She was not permitted to opine on the cost of his future medical and psychological treatment nor his future loss of income and loss of capacity to earn income. McNamara complains that limiting McKenzie's testimony and excluding Johnson as an expert was an abuse of discretion.

## Standard

As "gatekeeper", the trial judge must ensure that expert testimony is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). *Daubert* and its progeny have established a three-prong test for the admissibility of expert testimony. The proponent of the testimony must demonstrate: (1) the expert's qualifications; (2) the reliability of the proffered testimony; and (3) the fitness of the testimony, that is, the connection between the opinions and the issues in the case. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741- 43 (3d Cir. 1994).

The key to admissibility of expert testimony is reliability. The expert must have good grounds for his opinions. The focus is on methodology and not on the conclusions. Credibility decisions arise after admissibility has been determined. *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). Consequently, even though there may be better grounds or there are some flaws in the methods used, expert testimony is admissible if the grounds are reliable. All that is required is a "fit" between the grounds and the conclusions in the case. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000).

## Dr. Jett's Testimony

Dr. Jett's testimony was limited to the boundaries of his expert reports. He was not

3

permitted to render opinions on matters that were not contained in or supported by the contents of his reports.

Without the benefit of any MRI results or any prognosis of permanency, Dr. Jett provided, only days after the incident, a projection of future medical expenses and needs. These projections were wholly unsupported by his findings and conclusions at the time he made them. Indeed, his projections were based upon speculation and not on any reliable data or evidence. Without defining the nature and extent of McNamara's back injury, Dr. Jett concluded that McNamara suffered from a "lumbar disc disease", which was "causally related to his injuries." He then opined that the prognosis was guarded. He did not opine that McNamara had a chronic or permanent back injury related to the Kmart incident. In fact, he testified that he was "not sure" why McNamara had not improved, Tr. 198, and that McNamara's condition *"appears* to be permanent." Tr. 200.

His report presents a contradictory conclusion about the future. It states, "other *potential* problems Mr. McNamara *may* face in the future is the disabling effects of premature arthritis secondary to injuries sustained in the accident. It is my medical opinion that if he receives adequate rehabilitation and medical care, he will be able to enjoy a better quality of life." Nowhere in either of his reports does Dr. Jett opine to a reasonable degree of medical certainty that McNamara will suffer any degree of disability or any condition that may warrant the need for future medical expenses and needs as a result of injuries related to the incident.

In his addendum report, Dr. Jett accurately recites that the MRI revealed that McNamara had two disc herniations. In his reports, he did not opine that the herniations were causally related to the Kmart incident. There is nothing in either the MRI report or Dr.

4

Jett's report which states the age or the cause of the herniations.

With respect to the future medical needs and costs, nothing in Dr. Jett's report provided a basis for concluding that it is likely or probable that McNamara will require such medical treatment and needs. The chart is merely attached to the initial report.

Under the circumstances, Dr. Jett's proffered testimony and his chart regarding future non-medical needs and expenses, without any support, were unreliable. Allowing the jury to consider them would have invited speculation.

## McKenzie's Testimony

McKenzie testified about the effects of McNamara's functional disabilities upon his occupational opportunities. Tr. 17. She was not permitted to testify as to the cost of his future medical and psychological treatment or his future loss of income and loss of capacity to earn income. Future medical costs were beyond her expertise and were based on Dr. Jett's speculative and unreliable chart. She based her opinion regarding McNamara's future loss of income on his unsubstantiated "fear" of losing his job and not on any objective medical findings or projections.

McKenzie's testimony was limited because the proffered testimony regarding the medical costs and loss of earning capacity was based upon Dr. Jett's opinions and conclusions and McNamara's speculative fear. To the extent that Dr. Jett's opinions were unreliable, McKenzie's testimony likewise had no foundation. Therefore, because her proffered testimony relied upon Dr. Jett's faulty and unsupported conclusions, it was limited to matters within her competence and based upon reliable information.

5

### Johnson's Opinions

McNamara proffered Johnson as an expert economist to "quantify Plaintiff's economic damages." In his opposition to the motion to preclude Johnson as an expert, McNamara described Johnson's report. He stated that it "calculates his future losses, expenses and mitigating income to present value using appropriate discount or net discount rates."

Johnson's conclusions were premised on his understanding of McNamara's future medical and non-medical expenses provided to him by McKenzie. Because future medical needs and costs were beyond McKenzie's expertise and her calculation of medical expenses were derived from Dr. Jett's unreliable chart, the basis for Johnson's opinions were faulty. There was simply nothing for him to reduce to present value. His testimony would have been a mere reiteration of Dr. Jett's suspect numbers.

In any event, McNamara was not prejudiced by the exclusion of Johnson's testimony. Without a reduction to present value, the jury had higher values to consider in its damages calculation. This benefitted McNamara who now complains that Johnson should have been permitted to testify.

### Conclusion

For the reasons stated, Robert Johnson was precluded from testifying and Dr. Gary Jett and Susan McKenzie's opinions were limited.